UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAVID MICHAEL McLEAN,

        Petitioner,

                                        CASE NO. 2:13-CV-14116

    v.                                      JUDGE BERNARD A. FRIEDMAN

                                        MAGISTRATE JUDGE PAUL J. KOMIVES
KENNETH ROMANOWSKI,

        Respondent.

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    D.    *Sufficiency of the Evidence (Claims I & II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
             a. Larceny by False Pretenses (Claim I) . . . . . . . . . . . . . . . . . . . . . . . . . 11
             b. Larceny by Conversion (Claim II) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    E.    *Prosecutorial Misconduct (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
         1.    *Suppression of Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
             a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
             b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
         2.    *Evidence of Petitioner's Silence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
             a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
             b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    F.    *Right to Present a Defense (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
    G.    *Counsel (Claims III-V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
         1.    *Denial of Counsel of Choice (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . 34
             a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
             b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
         2.    *Ineffective Assistance of Counsel (Claims III & IV)* . . . . . . . . . . . . . . . . . . . . 38
             a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
             b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
    H.    *Sentencing (Claims VII-IX)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
         1.    *Inaccurate Information (Claims VII & IX)* . . . . . . . . . . . . . . . . . . . . . . . . . 48
             a. Clearly Established Law    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
             b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

        2.      *Restitution (Claim VIII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
    I.     *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
        1.      *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
        2.      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
    J.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
III.      <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*       *       *       *       *

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.     <u>REPORT</u>:

A.      *Procedural History*

    1.      Petitioner David Michael McLean is a state prisoner, currently confined at the Macomb Correctional Facility in New Haven, Michigan.

    2.      On February 15, 2008, petitioner was convicted of larceny by false pretenses over $20,000, MICH. COMP. LAWS § 750.218(5)(a); two counts of larceny by conversion between $1,000 and $20,000, MICH. COMP. LAWS §§ 750.362, .356(3)(a); and two counts of check insufficiency over $500, MICH. COMP. LAWS § 750.131(3)(c), following a jury trial in the St. Clair County Circuit Court. Petitioner was scheduled to appear for sentencing on April 14, 2008, but he failed to appear. He was subsequently held in contempt by the trial court. On March 3, 2009, petitioner was sentenced as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to concurrent terms of 9-20 years' imprisonment for the larceny by false pretenses conviction, 4-20 years' imprisonment for each larceny by conversion conviction, and 2-15 years' imprisonment for each check insufficiency conviction. Petitioner was also ordered to pay $52,000 in restitution, and was held in contempt for failing to appear.

    3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through

2

counsel, the following claims:

    I.    THE CONVICTION AND SENTENCE FOR THE CHARGE OF LARCENY BY FALSE PRETENSES OVER THE VALUE OF $20,000 SHOULD BE VACATED, AND THAT CHARGE ORDERED DISMISSED WITH PREJUDICE, AS THE PROSECUTION FAILED TO PRESENT LEGALLY SUFFICIENT EVIDENCE IN SUPPORT OF THAT CHARGE, IN VIOLATION OF MR. MCLEAN'S CONSTITUTIONAL DUE PROCESS RIGHTS, AS THE PROSECUTION FAILED TO PROVE THAT THE ASSERTED VALUE OF A 1961 IMPALA AUTOMOBILE THAT WAS THE SUBJECT PROPERTY FOR THAT CHARGE WAS A FALSE MISREPRESENTATION OF FACT.

    II.    DEFENDANT'S CONVICTIONS FOR LARCENY BY CONVERSION, UNDER MCL 750.362, SHOULD BE VACATED AND THE CHARGES ORDERED DISMISSED WITH PREJUDICE, AS THE PROSECUTION PRESENTED CONSTITUTIONALLY INSUFFICIENT EVIDENCE, IN VIOLATION OF MR. MCLEAN'S DUE PROCESS RIGHTS, THAT HE CONVERTED PROPERTY WHOSE TITLE REMAINED WITH MS. STOCKS TO HIS OWN USE.

    III.    DEFENDANT IS ENTITLED TO A RESENTENCING WHERE THERE WAS INSUFFICIENT RECORD SUPPORT FOR THE SCORING OF TEN POINTS UNDER OFFENSE VARIABLE 10, WHICH SCORING PLACED MR. MCLEAN INTO A HIGHER RANGE FOR THE RECOMMENDED MINIMUM SENTENCE UNDER THE SENTENCING GUIDELINES.

Petitioner filed a *pro per* supplemental brief, raising the following additional claims:

    IV.    SUBSTANTIAL PROSECUTORIAL MISCONDUCT DEPRIVED MR. MCLEAN OF HIS CONSTITUTIONAL DUE PROCESS RIGHT, WHERE THE PROSECUTOR (1) SUPPRESSED EVIDENCE IN VIOLATION OF DISCOVERY, (2) DIMINISHED ITS BURDEN OF PROOF, AND (3) INFRINGED ON THE JURY'S RULE AS THE TRIER OF FACT; AND TRIAL DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT.

    V.    DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE (1) COUNSEL FAILED TO INVESTIGATE, (2) COUNSEL FAILED TO PRESENT EXCULPATORY EVIDENCE PRESENTED TO HIM BY DEFENDANT, (3) COUNSEL FAILED TO INTERVIEW WITNESSES ON BEHALF OF THE DEFENSE, (4) COUNSEL FAILED TO OBJECT WHERE WITNESS WAS READING FROM NOTES DIRECTLY INTO

THE RECORD.

VI.    DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO
COUNSEL WHICH VIOLATED HIS FOURTEENTH AMENDMENT
RIGHT TO DUE PROCESS OF LAW, WHERE THE TRIAL COURT
DENIED HIM HIS CONSTITUTIONAL RIGHT TO COUNSEL AND DUE
PROCESS OF LAW.

VII.   DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO
PRESENT WITNESSES IN HIS DEFENSE AND HIS FOURTEENTH
AMENDMENT RIGHT TO DUE PROCESS, WHERE THE TRIAL
COURT ABUSED ITS DISCRETION IN DENYING DEFENSE A
CONTINUANCE TO PROCURE TESTIMONY FROM SUBPOENAED
WITNESSES.

VIII.  DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT BY
BEING DENIED HIS FOURTEENTH AMENDMENT RIGHT TO DUE
PROCESS OF LAW, WHERE DEFENDANT WAS SENTENCED UNDER
FALSE AND INACCURATE INFORMATION IN PSIR.

The court of appeals agreed that Offense Variable 10 had been improperly scored, and remanded

for resentencing.  The court of appeals also agreed that petitioner had been denied his right to

counsel in connection with the contempt hearing, and vacated the trial court's contempt finding.  In

all other respects, the court of appeals found no merit to petitioner's claims, and affirmed his

convictions. *See People v. McLean*, No. 294358, 2011 WL 4056389 (Mich. Ct. App. Sept. 13, 2011)

(per curiam).  Petitioner did not file an application for leave to appeal in the Michigan Supreme

Court.

4.     On November 21, 2011, petitioner was resentenced to concurrent terms of 76 months'

to 20 years' imprisonment on the larceny by false pretenses conviction, 4-20 years' imprisonment

on each larceny by conversion conviction, and 2-15 years' imprisonment on each insufficient check

conviction.

5.     Petitioner subsequently filed an appeal of right in the Michigan Court of Appeals,

4

claiming that the trial court erred in ordering restitution without conducting a hearing.  The court

of appeals rejected petitioner's claim, and affirmed the restitution award.  *See People v. McLean*,

No. 308268, 2013 WL 968108 (Mich. Ct. App. Feb. 21, 2013).

　　　6.　　Petitioner then filed an application for leave to appeal in the Michigan Supreme

Court, raising the eight claims raised in his initial direct appeal.  The Supreme Court denied

petitioner's application for leave to appeal in a standard order.  *See People v. McLean*, 495 Mich.

852, 836 N.W.2d 168 (2013).

　　　7.　　Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

on September 26, 2013.  As grounds for the writ of habeas corpus, he raises the claims that he raised

in his initial direct appeal except for the claim relating to the scoring of Offense Variable 10, and

the restitution claim that he raised in his second direct appeal.

　　　8.　　Respondent filed his answer on April 4, 2014.  He contends that petitioner's

prosecutorial misconduct claims are procedurally defaulted, and that all of petitioner's claims are

without merit.

B.　　*Factual Background Underlying Petitioner's Conviction*

　　　The evidence adduced at trial underlying petitioner's convictions was accurately summarized

by the Michigan Court of Appeals:

> 　　　Defendant's convictions arise from his interactions with Frances Stocks, who
> he first met late in June 2006. Defendant and Stocks subsequently became
> romantically involved. Defendant told Stocks that he owned a business named
> "Tomcat," that he had been in business for over 15 years, that he had a plant in
> Indiana where he manufactured belt drive systems for custom motorcycles, and that
> he was thinking about starting to do business in Port Huron, where he had just moved
> to be with his children.
> 　　　According to Stocks, defendant told her that he wanted to buy out his partner
> before he entered into a lucrative contract with Orange County Choppers. To relieve
> the financial strain of buying out his partner and because defendant said that he could

5

turn the $15,000 into $20,000 by October 2006, when he expected to deliver an order for five motorcycles to Orange County Choppers, Stocks gave $15,000 to defendant. Around this same time, Stocks also charged approximately $7,000 to her credit card for car parts and raw materials that defendant told her he needed for vehicles that he wanted to sell to raise money for his business. In July 2006, defendant told Stocks that the Orange County Choppers contract was finalized, and that he was talking to his attorney about making her a formal partner in the business. On July 14, 2006, Stocks bought a Chrysler 300, with upgraded wheels and tires, for defendant to use to entertain clients.

Stocks testified that defendant agreed to repay the money that she had already expended, for the checks, credit card purchases, and the car, through an installment loan agreement. However, when defendant later told Stocks that he would lose the Orange County Choppers contract if he did not get additional funding, Stocks applied for and received a personal bank loan for $25,000.

Stocks said that she got two more loans in early August 2006 at defendant's request. The first loan was for a $13,000 motorcycle defendant found on eBay. The second loan was for $35,000. Defendant said he had an Impala in storage in St. Clair County and Stocks believed that defendant signed the title over to her to use as collateral for the loan. Defendant said the Impala was worth $35,000. Stocks was later contacted by the bank that issued the loan and told that the title was never transferred to her and that the bank "could not locate that, that they had an actual lien on the actual title." During trial, the prosecution introduced a document from the LEIN system that indicated defendant still had title to the Impala. When Stocks thereafter questioned defendant about the title, he merely stated that he thought he had a buyer for the car.

In August and September 2006, defendant gave Stocks two checks that did not clear because of insufficient funds. Stocks regained possession of the Chrysler 300 in January 2007, but it no longer had the upgraded wheels and tires. Defendant told Stocks that all the wheels and tires were damaged. Furthermore, despite defendant's February 2007, promise to return the eBay motorcycle and the Impala, she never received either. Stocks estimated that she gave defendant a total of $124,371, and defendant had repaid approximately $18,000. Stocks opined at trial that she did not believe the Orange County Choppers contract existed.

*McLean*, 2011 WL 4056389, at *1-*2.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

6

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539

2:13-cv-14116-BAF-PJK   Doc # 14   Filed 06/26/14   Pg 8 of 55   Pg ID 1882

U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412). The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131

S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Sufficiency of the Evidence (Claims I & II)*

In his first two claims, petitioner challenges the sufficiency of the evidence with respect to his larceny convictions. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*

*v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution.  "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4 (2011) (per curiam).  The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319).  Likewise, a reviewing court "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story.").  It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution.  *See Jackson*, 443 U.S. at 326.  As the Court has explained, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065.  Under the amended version of § 2254(d)(1) a federal habeas court's review is "twice-deferential." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam).  A state court's decision that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference under AEDPA." *Coleman*, 132 S. Ct. at 2065; *see also*, *Cavazos*, 132 S. Ct. at 4.

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability

10

of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 132 S. Ct. at 2064 (citation omitted) (quoting *Jackson*, 443 U.S. at 324 n.16).

      2.    *Analysis*

                         *a.  Larceny by False Pretenses (Claim I)*

Petitioner was convicted of larceny by false pretenses with respect to his purported transfer of title to a 1961 Impala to Stocks in exchange for the $35,000 loan Stocks made to him. Michigan law provides that "[a] person who, with the intent to defraud or cheat makes or uses a false pretense to . . . [o]btain from a person any money or personal property or the use of any instrument, facility, article, or other valuable thing or service" is guilty of a felony. MICH. COMP. LAWS § 750.218(1)(c). If the value of the property obtained "has a value of $20,000.00 or more but less than $50,000.00," the crime is punishable by up to 15 years in prison and a fine of three times the value of the property. MICH. COMP. LAWS § 750.218(5)(a). Under § 750.218, "[t]he crime of larceny by false pretenses requires (1) a false representation as to an existing fact, (2) knowledge by the defendant of the falsity of the representation, (3) use of the false representation with an intent to deceive, and (4) detrimental reliance by the victim on the false representation." *People v. Webbs*, 263 Mich. App. 531, 532 n.1, 689 N.W.2d 163, 164 n.1 (2004); *see also*, *People v. Lueth*, 253 Mich. App. 680-81, 660 N.W.2d 322, 331 (2002). The Michigan Court of Appeals rejected petitioner's sufficiency of the evidence

11

claim and concluded that each of these four elements was satisfied, reasoning:

> Based on the evidence, a rational trier of fact could find: (1) that defendant falsely represented to Stocks that (a) he had a contract with Orange County Choppers and that the $35,000 loan would be paid off in full by October, (b) he had transferred title to the Impala, and (c) the Impala was in "mint" condition and was worth $35,000; (2) that defendant knew that his representation regarding (a) the existence of the contract and his ability to pay off the loan, and (b) the transfer of title were false; (3) that defendant intended to deceive Stocks into believing that he (a) had a contract with Orange County Choppers and could pay off the loan in full by October, and (b) had transferred title so the $35,000 Impala could be collateral for the loan; and (4) that Stocks relied on defendant's false representation when she gave him the $35,000 loan proceeds.

*McLean*, 2011 WL 4056389, at *2 (footnote omitted).  This determination was reasonable.

Petitioner contends that the prosecution presented insufficient evidence that his representation as to the value of the Impala was a misrepresentation of fact.  Rather, petitioner argues, his statement regarding the value of the Impala was merely a statement of opinion.  The court of appeals rejected this claim, reasoning that petitioner's statement regarding the value of the Impala, "along with the picture that defendant showed Stocks, served as the basis for the verification of value Stocks made before agreeing to the loan.  Defendant's statement regarding the Impala does not constitute a mere 'overcharge' . . . because 'overcharges' involve departures in a person's opinion of his services from the established standard."  *McLean*, 2011 WL 4056389, at *2 n.1 (internal quotation omitted).  This determination was reasonable.  Petitioner relies on *People v. Wilde*, 42 Mich. App. 514, 202 N.W.2d 542 (1972), in which the court held that a defendant's misrepresentation of the value of services rendered by him (which the court termed an "overcharge"), no matter how exaggerated or reprehensible, is a mere statement of opinion, and cannot constitute a misstatement of fact necessary to support a larceny by false pretenses charge.  *See id*. at 518-19, 202 N.W.2d at 545.  However, the Michigan Court of Appeals distinguished *Wilde*

12

in *People v. Cook*, 89 Mich. App. 72, 279 N.W.2d 579 (1979), explaining:

> Notwithstanding the general distinction between opinion and fact in this area of criminal law, a dishonest statement of opinion may be a false pretense if the relationship between defendant and the victim is such that the victim cannot be expected to protect himself. Thus, a dishonest expression of opinion may be a misrepresentation of fact suitable for false pretenses, especially where the opinion relates to a matter peculiarly within the knowledge of the one who expresses the opinion.

*Id*. at 89, 279 N.W.2d at 588 (internal quotation omitted). Here, based on Stocks testimony, a rational jury could have concluded that Stocks was in no position to protect herself against petitioner's misrepresentations and that the value of the Impala was peculiarly within petitioner's knowledge. Moreover, beyond petitioner's assessment of the value of the Impala, there was evidence presented that he misrepresented the condition of the Impala. Stocks testified that petitioner showed her a photograph of an Impala in "mint condition," which he claimed was the car being used to secure the loan, when in a fact a picture of the actual car petitioner owned was not in such a condition. His misrepresentation as to the condition of the Impala is a misrepresentation concerning a then-existing fact, not a mere statement of opinion.

Moreover, even if the misrepresentation of the value of the Impala is a mere statement of opinion that is insufficient to prove the first element--a false representation as to an existing fact--of the offense, as the court of appeals recognized there was evidence of two other false representations of existing fact upon which the victim relied in making the $35,000 loan to petitioner. First, there was evidence that petitioner falsely represented that he had a contract with Orange County Choppers that would garner funds with which to repay the loan. Second, there was evidence that petitioner falsely represented he had transferred title to the Impala as security for the loan, when in fact he had not done so. Either of these statements constituted a false statement as to an existing fact, and

Stocks testified that she relied on these statements in making the $35,000 loan to petitioner. In light of this evidence, the verdict was not "so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. It therefore follows that the Michigan Court of Appeals's rejection of this claim was reasonable.

### b.  Larceny by Conversion (Claim II)

Petitioner also contends that the prosecutor presented insufficient evidence to prove his guilt on two counts of larceny by conversion. These counts arose from Stocks's transfer to petitioner of the upgraded wheels and tires on the Chrysler 300 that she bought for petitioner to use to entertain clients, and her purchase of a motorcycle on eBay. Michigan law makes it a felony to commit larceny, and provides for various punishments based on the value of the property stolen. *See* MICH. COMP. LAWS § 750.356. Michigan law further provides that "[a]ny person to whom any money, goods or other property, which may be the subject of larceny, shall have been delivered, who shall embezzle or fraudulently convert to his own use, or shall secrete with the intent to embezzle, or fraudulently use such goods, money or other property, or any part thereof, shall be deemed by so doing to have committed the crime of larceny[.]" MICH. COMP. LAWS § 750.362. "The essential elements of larceny by conversion [are]: (1) the property at issue must have 'some value,' (2) the property belonged to someone other than the defendant, (3) someone delivered the property to the defendant, irrespective of whether that delivery was by legal or illegal means, (4) the defendant embezzled, converted to his own use, or hid the property with the intent to embezzle or fraudulently use it, and (5) at the time the property was embezzled, converted, or hidden, the defendant intended to defraud or cheat the owner permanently of that property." *People v. Mason*, 247 Mich. App. 64, 72, 634 N.W.2d 382, 386-86 (2001) (internal quotation omitted). The distinguishing feature

14

between larceny by conversion and larceny by false pretenses is the victim's intent with respect to

title to the property.  "[I]f the owner of the goods intends to keep title but part with possession, the

crime is larceny [by conversion]; if the owner intends to part with both title and possession, albeit

for the wrong reasons, the crime is false pretenses."  *People v. Malach*, 202 Mich. App. 266, 271,

507 N.W.2d 834, 837 (1993).

Petitioner contends that the evidence was insufficient to show that Stocks intended to keep

title to either the upgraded wheels and tires or the eBay motorcycle, and thus that the evidence was

insufficient to prove larceny by conversion rather than larceny by false pretenses, because Stocks

never expressly testified that she intended to keep title to these items.  The Michigan Court of

Appeals rejected this claim.  As to the eBay motorcyle, the court reasoned:

> Stocks purchased the motorcycle with the proceeds of a Capital One internet loan for
> $12,000 and a $1,000 cash deposit.  The motorcycle was delivered to defendant's
> home for modification and ultimately sale under the Orange County Choppers
> contract.  The fact that Stocks retained title to the motorcycle is consistent with the
> conclusion that she only gave defendant possession of it for this limited purpose.

*McLean*, 2011 WL 4056389, at *3.  With respect to the upgraded wheels and tires, the court of

appeals reasoned:

> Stocks testified that defendant asked her to purchase a new, flashier vehicle, so that
> he could use it to entertain clients.  Stocks purchased a Chrysler 300 with a roughly
> $37,000 loan, which included upgraded wheels and tires defendant wanted.  She said
> the $2,400 cost of the four upgraded wheels and tires was included in her vehicle
> financing, and then the dealership wrote a $2,400 check directly to Discount Tire
> Company.  Stocks said that defendant took the car to Discount Tire and had the
> upgraded wheels and tires installed.  Some evidence, such as defendant's promise
> that the company would make the car payments, suggests that Stocks intended to
> transfer title and possession of the car, wheels, and tires to defendant.  However, a
> reasonable trier of fact could otherwise find that Stocks gave possession of the car,
> wheels, and tires for the limited purpose of entertaining clients and, by subsequently
> returning the car without the upgraded wheels and tires, defendant intended to
> permanently cheat Stocks of those items.

15

*Id*. The Court should conclude that these determinations were reasonable.

Contrary to petitioner's arguments, there was abundant evidence from which the jury could conclude that Stocks intended to retain title to both the Chrysler 300 (with its wheels and tires) and the motorcycle. Stocks did not testify, nor was any other evidence presented to show, that she intended to transfer title. Nor did Stocks ever transfer title to petitioner which, unlike with other personal property, is a formal act with respect to motor vehicles. Further, petitioner in fact returned the Chrysler 300 to Stocks, suggesting that she retained title to the car. Stocks also testified that she never intended for the motorcycle to be dismantled and its parts sold off, nor did she consent to petitioner's doing so. Petitioner appears to argue that because Stocks never intended to possess either the car or the motorcycle (the one being for petitioner's use and the other intended for resale), she did not intend to retain title. But her intent to give up possession is the defining element of the larceny by conversion statute. The fact that she never intended to possess the car or motorcycle says nothing about whether she intended to retain or part with title to those vehicle. In light of Stocks's testimony and the absence of any evidence that she intended to relinquish title to the Chrysler 300 or the motorcycle, the jury's verdict was not "so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. It therefore follows that the Michigan Court of Appeals's rejection of this claim was reasonable.

E.    *Prosecutorial Misconduct (Claim III)*

Petitioner next contends that he was deprived of a fair trial by various instances of prosecutorial misconduct. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Suppression of Evidence*

16

Petitioner first contends that the prosecutor suppressed various items of exculpatory evidence. The Court should reject this claim.

### a. Clearly Established Law

The Due Process Clause requires the state to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a *Brady* claim, petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also*, *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601.

### b. Analysis

To the extent petitioner claims that the prosecutor violated a state court discovery order, his claim is not cognizable on habeas review. "[T]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Any violation of the state law discovery rules raises an issue not cognizable on habeas review. *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002); *Burns v. Lafler*, 328 F. Supp. 2d 711, 723 (E.D. Mich. 2004) (Gadola, J.); *Meade v. Lavigne*, 265 F. Supp. 2d 849, 867 (E.D. Mich. 2003)

17

(Tarnow, J.).   Rather, petitioner must show that he was deprived of material, exculpatory information by the prosecution's omission.  Petitioner has failed to make this showing.

Petitioner contends that the prosecution suppressed a repair invoice from Discount Tire that would have shown that he in fact repaired the allegedly damaged rims and tires; checks he wrote to Stocks for the purchase and delivery of the eBay motorcycle; evidence that the victim's insurance company had reimbursed her for the wheels and tires; and copies of documents related to petitioner's bank account that were seized pursuant to a search warrant.  Regardless of whether these items of evidence were material or exculpatory, as the court of appeals correctly held, *see McLean*, 2011 WL 4056389, at *6, *7, petitioner cannot show that they were suppressed by the prosecution.  It is well established that "[t]here is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available . . . from another source, because in such cases there is really nothing for the government to disclose."  *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (internal quotations omitted); *see also*, *Spirko v. Mitchell*, 368 F.3d 603, 610 (6th Cir. 2004).  Here, the evidence petitioner claims was suppressed consisted of third-party business records, equally available to petitioner by subpoena (or, with respect to his own records, a simple request), and of which he was equally aware because they involved transactions with which he was directly involved.  Because these third-party business records were known to petitioner and could have been discovered through the exercise of reasonable diligence, they were not suppressed within the meaning of *Brady*.  *See Cunningham v. Wong*, 704 F.3d 1143, 1154 (9th Cir. 2013); *Maynard v. Government of the Virgin Islands*, 392 Fed. Appx. 105, 120 (3d Cir. 2010)  Thus, the Michigan Court of Appeals's rejection of petitioner's *Brady* claim with respect to these items of evidence was reasonable.

18

Petitioner also contends that the prosecution suppressed the affidavits submitted in support of the search warrants issued for his accounts at Citizens First Savings Bank and Eastern Michigan Bank, relating to the two insufficient funds checks.  The Michigan Court of Appeals rejected this claim, concluding that petitioner had "fail[ed] to provide support for the contention that these two search warrant affidavits contained exculpatory information."  *McLean*, 2011 WL 4056389, at *6. This determination was reasonable.  Petitioner does not suggest that the warrants or affidavits contain any material, exculpatory information going to his guilt or innocence.  *See Jarrell v. Balkcom*, 735 F.2d 1242, 1258 (11th Cir. 1984).  Rather, he contends that disclosure of the warrants and affidavits (or lack thereof) would have provided a basis to suppress the fruits of those searches. This is because, petitioner argues, he reimbursed Stocks for the insufficient funds checks well before the warrant was executed, thus negating probable cause for the searches.  Thus, petitioner is in actuality asserting a Fourth Amendment claim under the guise of *Brady*.  Because "the exclusion of illegally seized evidence is simply a prophylactic device intended to deter Fourth Amendment violations by law enforcement officers," *Kaufman v. United States*, 394 U.S. 217, 224 (1969), the Supreme Court has determined that

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Stone v. Powell*, 428 U.S. 465, 482 (1976); *see also, Cardwell v. Taylor*, 461 U.S. 571, 571-72 (1983) (per curiam).  In essence, petitioner's "claim is that the search warrant affidavit is *Brady* material because if he had it, he could have shown . . . that there was no probable cause to search his [bank records].  This is at bottom a Fourth Amendment claim in *Brady* clothing" that is barred by the *Stone* rule.  *Torres v. Irvin*, 33 F. Supp. 2d 257, 276 (S.D.N.Y. 1998); *see also, O'Quinn v.*

*Estelle*, 574 F.2d 1208, 1209-10 (5th Cir. 1978); *White v. Berghuis*, No. 2:12-CV-13680, 2014 WL 1304648, at *5 (E.D. Mich. Mar. 28, 2014) (Cox, J.); *Campney v. Superintendent, Bare Hill Correctional Facility*, No. 06-cv-353, 2008 WL 4018177, at *7 (D.N.H. Aug. 26, 2008).

Moreover, even assuming that the failure to disclose information relevant to the validity of a search implicates *Brady*, the underlying premise of petitioner's illegal search claim is faulty. That is, it was irrelevant to the insufficient funds charges that petitioner had reimbursed Stocks for the amount of the checks. The insufficient funds statute provides that "[a] person shall not make, draw, utter, or deliver any check, draft, or order for the payment of money, to apply on account or otherwise, upon any bank or other depository with intent to defraud and knowing at the time . . . that the maker or drawer does not have sufficient funds in or credit with the bank or other depository to pay the check, draft, or order in full upon its presentation." MICH. COMP. LAWS § 750.131(1). The elements of this offense are: "(1) an intent to defraud; (2) the drawing of a check for the payment of money upon a bank; and (3) knowledge by the drawer of the check that the bank account has insufficient funds or credit for the payment of such check." *People v. Chappelle*, 114 Mich. App. 364, 370, 319 N.W.2d 584, 587 (1982), *overruled on other grounds by People v. Bearss*, 463 Mich. 623, 625 N.W.2d 10 (2001). These elements focus on the defendant's intent and knowledge at the time the check is written. Petitioner has cited, and I have found, no cases suggesting that subsequent repayment negates the offense. On the contrary, the general rule is that "[i]t is no defense to a charge of larceny by false pretenses that there was no loss of property because the property was subsequently recovered. . . . Any larceny crime is completed once a taking has been accomplished."

*Id*. at 369, 319 N.W.2d 587.[1]  Thus, petitioner could be guilty of the insufficient funds charges regardless of whether he subsequently repaid the amounts reflected in the checks.  It follows that his subsequent repayment was irrelevant to the determination of whether there was probable cause to believe that his bank records would uncover evidence of his writing of insufficient funds checks. Thus, even if the alleged suppression of the warrants and affidavits otherwise stated a cognizable *Brady* claim, petitioner has failed to show that the disclosure of those documents would have provided any information material to the probable cause determination.

Petitioner next contends that the prosecution failed to disclose a police report, taken by the St. Clair County Sheriff's Department, involving an altercation between Stocks and Shelly Hicks. According to petitioner, on March 3, 2007, Stocks arrived at his home, looking in the windows of his home and shop.  Hicks confronted Stocks, and an argument ensued regarding the allegations against petitioner.  Hicks called the Sheriff's Department, and filed a complaint alleging that Stocks had attempted to run over Hicks with her vehicle.  Stocks denied this, and claimed that Hicks had jumped on the hood of her vehicle.  Petitioner contends that the police report of this encounter went to the credibility of both Hicks and Stocks.  However, nothing in the record supports petitioner's assertion that such an altercation ever occurred.  Certainly, there was no testimony about such an altercation by either Hicks and Stocks, and petitioner has not presented any evidence, such as an affidavit from Hicks, supporting his allegation.  More importantly, even assuming that such an altercation occurred and that a police report was made concerning the altercation, petitioner cannot

---

[1]Presenting an insufficient funds check is a species of larceny by false pretenses.  *See People v. LaRose*, 87 Mich. App. 298, 304, 274 N.W.2d 45, 48 (1978) ("It was clearly the Legislature's intent, in enacting the insufficient funds statute, to carve out an exception to the false pretenses statute and to provide for a lesser penalty for the particular type of false pretense involved in presentation of an insufficient funds check.").

21

show that the report would have provided any material, exculpatory evidence.  The facts of the altercation would have provided no substantive evidence relevant to the charges.  The fact that Hicks and Stocks gave conflicting accounts to the police, if true, might have damaged the credibility of one of them.  But Hicks's testimony was limited to identifying the Impala, and Stocks was extensively impeached on other matters yet the jury chose to largely believe her testimony.  The conflict between Hicks's and Stocks's accounts of their altercation, relating to a collateral matter, would have had little utility as impeachment evidence.  As the Supreme Court has explained, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-10 (1976).  Thus, as several circuit courts have explained,

> "it unwise to infer the existence of *Brady* material based upon speculation alone. . . . '[U]nless [a] defendant is able to raise at least a colorable claim that the [disputed material] contained evidence favorable to [him] and material to his claim of innocence or to the applicable punishment,'" no *Brady* violation will be established.

*United States v. Williams-Davis*, 90 F.3d 490, 514 (D.C. Cir. 1996) (quoting *United States v. Ramos*, 27 F.3d 65, 71 (3d Cir. 1994) (quoting *United States v. Griffin*, 659 F.2d 932, 939 (9th Cir. 1981))) (alterations in original).  Because petitioner cannot show that the prosecution suppressed a police report that contained material, exculpatory information, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

Finally, petitioner contends that the prosecution suppressed evidence of another police report which would have shown that Stocks had been involved in a domestic violence complaint in which she tried to conceal evidence.  *See* Pet., App. 1E-1.  As the Michigan Court of Appeals correctly held, however, there is no evidence that the prosecution ever possessed or was aware of this report. *See McLean*, 2011 WL 4056389, at *6.  It is true that the *Brady* rule extends to all members of the

prosecution team, including the police.  *See Kyles v. Whitley*, 514 U.S. 419, 438 (1995).  Thus, prosecutors are "held accountable for information known to police investigators."  *United States v. Josleyn*, 206 F.3d 144, 154 (1st Cir. 2000).  This rule, however, imposes on the prosecutor only "a duty to learn of any favorable evidence known to others acting on the government's behalf *in the case*, including the police."  *Kyles*, 514 U.S. at 438 (emphasis added).  In the absence of a coordinated effort, information in the possession of one government entity is not imputed to another government entity.  *See Moon v. Head*, 285 F.3d 1301, 1309-10 (11th Cir. 2002) (discussing cases); *see also*, *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998).  In other words, "*Kyles* cannot 'be read as imposing a duty on the prosecutor's office to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue.'"  *United States v. Merlino*, 349 F.3d 144, 154 (3d Cir. 2003) (quoting *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996)); *see also*, *Goff v. Bagley*, 601 F.3d 445, 476 (6th Cir. 2010).  Here, petitioner was charged by the St. Clair County prosecutor and tried in the St. Clair County Circuit Court on charges investigated by the St. Clair County Sheriff's Department.  The domestic violence report which petitioner contends was suppressed involved an unrelated crime predating the events at issue in petitioner's case by several months and the actual trial by almost two years.  That report was taken by an officer of the New Baltimore Police Department, a municipal policy agency located in Macomb County.  There is nothing to suggest that any one on the prosecution team had any knowledge of this police report, and the prosecution had no duty to learn of information relating to a separate case possessed by a municipal policy agency located in a separate county.  Thus, petitioner cannot show that this information was suppressed by the prosecution within the meaning of *Brady*.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on

his *Brady* claims.

    2.    *Evidence of Petitioner's Silence*

Petitioner also contends that the prosecutor committed misconduct by eliciting evidence that he had invoked his right to remain silent. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

*a.  Clearly Established Law*

The Fifth Amendment provides, in relevant part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. CONST. amend. V. This provision applies to the states via the Due Process Clause of the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). The Supreme Court has determined that this provision "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965). Likewise, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Doyle v. Ohio*, 426 U.S. 610, 618 (1976). Nevertheless, the Court's subsequent cases have made clear that *Griffin* and *Doyle* are limited to situations in which the defendant's silence was induced by the governmental assurances embodied in the *Miranda* warnings. *See Fletcher v. Weir*, 455 U.S. 603, 606 (1982) (per curiam) (post-arrest statements made before *Miranda* warnings are given may be commented upon by prosecutor, noting that the Court has "consistently explained *Doyle* as a case where the government had induced silence by implicitly assuring the defendant that his silence would not be used against him."); *Jenkins v. Anderson*, 447 U.S. 231, 240 (1980) (pre-arrest silence may be used for impeachment because "no governmental action induced [the defendant] to remain silent before arrest.").

*b. Analysis*

At trial, it was defense counsel who first raised the issue of petitioner's failure to give a statement to the police.  Attempting to show that the police did not adequately investigate petitioner's side of the story, counsel conducted the following cross-examination of Detective Jacobson:

Q:      And a good way to get exculpatory evidence would have been to contact Mr. McLean in this matter.
        Was that ever done?  Did you ever sit down with Mr. McLean and ever attempt to get his side of the story?

A:      I did attempt, yes.

Q:      You did attempt to?

A:      Yes, sir.

Q:      Did that meeting ever take place?

A:      There were actually two attempts and, um, there, there were to contacts attempted by myself.  One by phone, one in person with an attorney present.

Q:      And those meetings never went to fruition; no evidence was ever exchanged, no stories were ever told, is that what you're telling us?

A:      I'm telling you the opportunity was presented to Mr. McLean and I did not receive a statement.

Q:      Did you ever have contact with an attorney, Paul Louisell, in this matter?

A:      I did not speak to Paul Louisell, no.

Q:      Did he ever attempt to contact you?

A:      There were voice mails on my machine at the Sheriff Department.  Excuse me.

Q:      Did you ever call him back?

A:      I did not.

25

Trial Tr., Vol. III, at 410-11.  On redirect examination, the prosecutor explored this matter further:

Q:      You were asked about attempts or trying to get a statement from Mr. McLean.  You recall those statements?

A:      I do.

Q:      And if I understood your testimony correctly, you said that you made two different attempts by leaving messages, correct?

A:      No.  One was a message, one was in person.

Q:      In person directly to Mr. McLean?

A:      Absolutely.

Q:      And if I heard your testimony in response to a question by Defense Counsel, there was an attorney present at that time?

A:      There was.

Q:      All right.  And you had a couple of messages from an attorney asking you to contact that attorney?

A:      The messages that I received from an attorney were not from the attorney that was present during the in-person contact.

Q:      So there were some different attorneys that you were having some dealings with during this investigation at that stage, correct?

A:      That's correct.

Q:      All right.  When you say you give an opportunity to make a statement, and you also say that you're aware now that there's some attorneys involved, you're aware of a person's right not to talk to you, correct?

A:      Absolutely.

Q:      And you're aware of a person's right to have an attorney represent that person, correct?

A:      I am.

Q:      Is it fair to say that knowing now that there's some attorneys involved that

26

> pursuing making a statement wouldn't be something you would do at that point in time?
>
> A:      At certain points in time, no.  And there was one last opportunity give at the, at the time I had personal contact with Mr. McLean and an attorney, and that was the last opportunity given.

*Id*. at 425-27.

Petitioner contends that this testimony impermissibly commented on his right to remain silent.  The Michigan Court of Appeals rejected this claim, reasoning that the prosecutor's questioning "was proper to rebut defense counsel's line of questioning during cross-examination that defendant was precluded from telling his side of the story before trial." *McLean*, 2011 WL 4056389, at *7.  This determination was reasonable.[2]  In *United States v. Robinson*, 485 U.S. 25 (1988), the

_____

[2]It is not clear whether, at the times referred to by Detective Jacobson, petitioner had yet been placed under arrest or read his *Miranda* rights.  If he had not yet been arrested or advised of his right to remain silent, Detective Jacobson's testimony would raise no Fifth Amendment claim.  While it is true that several courts of appeals, including the Sixth Circuit, have held that it violates the Fifth Amendment to use a defendant's pre-arrest silence as substantive evidence of guilt.  *See Combs v. Coyle*, 205 F.3d 269, 283 (6th Cir. 2003), this is a question on which the courts are equally divided, *see id.* at 282, and, more importantly for purposes of § 2254(d)(1), the Supreme Court has never held that the use as substantive evidence of a defendant's pre-arrest silence not induced by the *Miranda* warnings violates the Fifth Amendment.  On the contrary, the Court in *Jenkins* explicitly declined to "consider whether or under what circumstances prearrest silence may be protected by the Fifth Amendment." *Jenkins*, 447 U.S. at 236 n.2; *see also, Portuondo v. Agard*, 529 U.S. 61, 70 (2000) (noting the *Jenkins* Court's observation that "it was not clear whether the Fifth Amendment protects pre-arrest silence.").  As the Supreme Court has explained on several occasions, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009) (internal quotation omitted); *accord Wright v. Van Patten*, 128 S. Ct. 743, 747 (2008).  Thus,

> [t]he Supreme Court's failure to rule on this issue, coupled with the "disagreement and confusion" among the federal courts concerning the resolution of this issue, precludes this court from finding that the Michigan Court of Appeals' decision was an unreasonable application of clearly established federal law, where clearly established Supreme Court precedent on the issue of using prearrest silence as substantive evidence of guilt did not, and does not, exist.

*Mitchell v. Lafler*, No. 02-CV-74805, 2003 WL 21817616, at *4 (E.D. Mich. July 10, 2003) (Cohn, J.) (citing *Worden v. McLemore*, 200 F. Supp. 2d 746, 752-53 (E.D. Mich. 2002)), *aff'd*, 118 Fed. Appx. 24, 27 (6th Cir. 2004); *see also, Jones v. Trombley*, 307 Fed. Appx. 931, 934 (6th Cir. 2009).  Because petitioner's

Court held that the *Griffin* prohibition on comment by the prosecutor does not apply "where . . . the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel[.]"  *Robinson*, 485 U.S. at 32; *see also, United States v. Hasting*, 461 U.S. 499, 515 (1983) (Stevens, J., concurring) ("But I do not believe the protective shield of the Fifth Amendment should be converted into a sword that cuts back on the area of legitimate comment by the prosecutor on the weaknesses in the defense case.").  Here, it was defense counsel who first opened the door to this line of inquiry, attempting to show that Detective Jacobson did not give petitioner an opportunity to tell his side of the story.  *See Lockett v. Ohio*, 438 U.S. 586, 595 (1978) (no *Griffin* violation where defendant's "own counsel had clearly focused the jury's attention on her silence[.]").  The prosecutor's follow-up was a fair response to this line of inquiry by defense counsel.  Further, at no point during the questioning or during closing argument did the prosecutor suggest that petitioner was guilty because he invoked his rights; on the contrary, it was the prosecutor who reiterated on redirect examination that petitioner had a right not to speak and to have an attorney present.  In these circumstances, petitioner cannot show that the prosecutor's questions or Detective Jacobson's responses were improper.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.       *Right to Present a Defense (Claim VI)*

Petitioner next contends that he was denied his right to present a defense when the trial court denied him a continuance to present the testimony of attorney Martin Brosnan.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

---

claim is without merit in any event, the Court need not determine whether Detective Jacobson's testimony referred to petitioner's pre-arrest silence.

1.      *Clearly Established Law*

Although the Constitution does not explicitly provide a criminal defendant with the right to "present a defense," the Sixth Amendment provides a defendant with the right to process to obtain witnesses in his favor and to confront the witnesses against him, and the Fourteenth Amendment guarantees a defendant due process of law.  Implicit in these provisions is the right to present a meaningful defense.  As the Supreme Court has recognized, "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense." *Washington v. Texas*, 388 U.S. 14, 19 (1967).  "The right to compel a witness' presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the right to have the witness' testimony heard by the trier of fact.  The right to offer testimony is thus grounded in the Sixth Amendment." *Taylor v. Illinois*, 484 U.S. 400, 409 (1988).  Further, the Court has noted that "[t]his right is a fundamental element of due process of law," *Washington*, 388 U.S. at 19, and that "[f]ew rights are more fundamental[.]" *Taylor*, 484 U.S. at 408.  Although the right to present a defense is fundamental, it is not absolute.  Thus, the right must yield to other constitutional rights, *see e.g.*, *United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978) ("The Sixth Amendment right of an accused to compulsory process to secure attendance of a witness does not include the right to compel the witness to waive his Fifth Amendment privilege."), or to other legitimate demands of the criminal justice system, *see United States v. Scheffer*, 523 U.S. 303, 308 (1998).  Further, to constitute a denial of the right to present a defense, a trial court's exclusion of evidence must "infringe[] upon a weighty interest of the accused." *Scheffer*, 523 U.S. at 308.  A "weighty interest of the accused" is infringed where "the exclusion of evidence seriously undermined 'fundamental elements of the defendant's defense' against the crime charged." *Miskel*

29

*v. Karnes*, 397 F.3d 446, 455 (6th Cir. 2005) (quoting *Scheffer*, 523 U.S. at 315).  Thus, "'[w]hether the exclusion of [witnesses'] testimony violated [defendant's] right to present a defense depends upon whether the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.'" *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (quoting *Washington v. Schriver*, 255 F.3d 45, 47 (2d Cir. 2001)) (alterations by quoting court).

Although the Supreme Court has not more specifically set forth governing standards to determine when a failure to grant a continuance will constitute a denial of the right to present a meaningful defense, the Court has noted that the grant or denial of a motion for a continuance is within the sound discretion of the trial judge, and will be reviewed only for an abuse of that discretion.  *See Avery v. Alabama*, 308 U.S. 444, 446 (1940).   The Court has also explained that "[i]t would take an extreme case to make the action of the trial court in such a case a denial of due process of law."  *Franklin v. South Carolina*, 218 U.S. 161, 168 (1910).  "The matter of a continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel."  *Unger v. Sarafite*, 376 U.S. 575, 589 (1964).  At the same time, "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality."  *Id.*  In short, "broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to assistance of counsel."  *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quoting *Unger*, 376 U.S. at 589).  Importantly, denial of a continuance amounts to a due process violation warranting habeas relief

only where the petitioner shows that he was prejudiced by the omission of the evidence he would have procured had the continuance been granted. *See Mackey v. Dutton*, 217 F.3d 399, 408 (6th Cir. 2000); *cf. United States v. Allen*, 247 U.S. 741, 771 (8th Cir. 2001) (applying same standard in case on direct review); *United States v. Hall*, 200 F.3d 962, 964 (6th Cir. 2000) (same).

2.   *Analysis*

At the conclusion of the third day of trial, after the prosecution had rested and petitioner had presented his own witnesses, defense counsel placed on the record a request for a continuance to secure rebuttal witnesses, resulting in the following exchange:

> MR. VITALE:     Your Honor, we had some, some side bar discussions with Madam Prosecutor, myself, and your Honor regarding a subpoenaed witness we have. I just want to make a formal motion, Judge. The witness is Marty Brosnan, the attorney who authored a number of the letters that were admitted, and indeed a number of the letters that went to Ms. Stocks. We have subpoenaed him as a rebuttal witness, your Honor. We believe he will testify that he did enclose the title to her and did sent it to her. In fact, I know he's going to testify to that. I consider him an extremely important rebuttal witness, your Honor. I consider that extremely important evidence that goes right to the credibility of the, of the complaining witness.
>
> Now, Judge, I have one more witness besides Mr. Brosnan, okay. He's assured me that he will –
>
> THE COURT:     Where's Mr. Brosnan?
>
> MR. VITALE:     Mr. Brosnan called me today – actually it was not him, it was his attorney who called me and then I spoke to him personally on the phone, your Honor, and he told me he cannot make it down here today and that he will be happy to be here first thing in the morning. And Judge, what I'm saying, it's a quarter after 3:00 now –
>
> THE COURT:     Counsel, look. No, that's – I'm afraid that it's, it's a little bit more complicated than that. They faxed or sent to our office objections to their testifying and saying that the subpoena

31

wasn't valid and just got served on them yesterday and this is for a case that everybody's known about, this isn't any surprise, whatever, and they were objecting, and that's – I filed that with the court file and I think that based upon what they were saying they had every right in the world to object to the subpoena and, as I've said, if you could get him voluntarily to come in here today, fine.  But, you know, I'm–

MR. VITALE:          I understand, your Honor.

THE COURT:          Yeah.  I mean, that's, that's were the problem is.

MR. VITALE:          I understand, your Honor.

Trial Tr., Vol. III, at 494-95.  Relying on MICHIGAN COURT RULE 2.503(C), the Michigan Court of Appeals concluded that the trial court did not err in failing to grant a continuance, concluding that: (1) petitioner "did not move to adjourn the proceedings as soon as possible" as required by the rule, because petitioner "waited until approximately 3:00 p.m. on the third day of trial"; (2) petitioner had not "exercised due diligence to secure Brosnan's presence" because "Brosnan was not included on [his] amended witness list" and petitioner "did not subpoena Brosnan until 7:30 p.m., on the second day of trial–the day before he was ordered to appear"; and (3) in light of Brosnan's objection to the subpoena "the trial court had no assurances that Brosnan would testify if the case were continued." *McLean*, 2011 WL 4056389, at *10.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

        Petitioner cannot show that the trial court's denial of a continuance was so unreasonable and arbitrary as to violate his due process rights under *Unger*.  As the court of appeals explained, Brosnan's role in the transactions leading to the charges was well known, and the potential need for his testimony came as no surprise to petitioner.  Despite this, Brosnan was not included on petitioner's amended witness list, counsel did not subpoena him until the evening before he was

commanded to appear, and counsel did not request a continuance until after all the other evidence had been presented at trial. Federal habeas courts "have consistently found that these reasons–failure to subpoena the witness and a late trial request for an adjournment–to be sufficient grounds for a trial court to deny a request for an adjournment to secure missing witnesses, and thus denied habeas relief." *Rosario v. Attorney Gen. of N.Y.*, No. 00 Civ. 6681, 2001 WL 267641, at *14 (Mar. 19, 2001) (citing cases), *magistrate judge's report and recommendation adopted*, 2001 WL 521828 (S.D.N.Y. May 15, 2001); *see also*, *Banks v. Smith*, No. 01-CV-72061, 2002 WL 1480810, at *7-*8 (E.D. Mich. June 27, 2002) (Edmunds, J.). Thus, the Michigan Court of Appeals's rejection of petitioner's claim was not unreasonable.

Further, petitioner cannot show that the denial of a continuance deprived him of his right to present a defense. Petitioner contends that Brosnan would have testified that he in fact sent the title to the Impala to Stocks. Even had Brosnan so testified (and the jury believed this testimony), however, this would not have provided a defense to the false pretenses charge involving the Impala. As explained above in connection with petitioner's sufficiency of the evidence claim, the prosecution relied on three separate fraudulent statements made by petitioner in support of this charge: (1) the existence of the Orange County Choppers contract the proceeds of which would be used to pay back the loan secured by the Impala; (2) the transfer of title to the Impala; and (3) the value of the Impala. The court of appeals determined, correctly, that each of these three fraudulent representations was sufficient to prove petitioner's guilt beyond a reasonable doubt on the false pretenses charge. Even if Brosnan's testimony could have created a reasonable doubt with respect to petitioner's guilt based on the misrepresentation that title to the Impala was transferred to Stocks, it would have had no bearing on the sufficiency of the evidence with respect to petitioner's other

33

misrepresentations relating to the Impala, each of which was independently sufficient to sustain the false pretenses charge. Thus, the denial of a continuance to secure Brosnan's testimony did not "infringe upon a weighty interest of" petitioner, *Scheffer*, 523 U.S. at 308, by excluding evidence that, evaluated in the context of the entire record, would have "'create[d] a reasonable doubt that did not otherwise exist.'" *Blackwell*, 459 F.3d at 753 (quoting *Washington*, 255 F.3d at 47).

Petitioner also contends that he was denied his right to present a defense because the denial of a continuance prevented him from presenting the testimony of Joseph Hubbard, a Discount Tire employee. However, neither here nor in the trial court did petitioner make any offer of proof as to the purported testimony of Hubbard, nor has he presented any evidence, through affidavit or otherwise, as to the willingness of Hubbard to testify and the exculpatory nature of his testimony. Petitioner has thus failed to meet his burden of demonstrating that he was prejudiced by the denial of a continuance. *See Johnson v. Balcarcel*, No. 07-12783, 2009 WL 5171812, at *13 (E.D. Mich. Dec. 22, 2009) (Duggan, J., adopting recommendation of Komives, M.J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.     *Counsel (Claims III-V)*

Petitioner next contends that he was denied his right to counsel of his choice, and that counsel was ineffective in various respects.

1.     *Denial of Counsel of Choice (Claim V)*

Petitioner contends that he was denied his right to counsel of his choice when the trial court prohibited the substitution of counsel at petitioner's original sentencing. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

*a. Clearly Established Law*

34

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. This right contemplates a corollary right to the counsel of one's choice. As the Supreme Court has explained, "'the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds.'" *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989)). Thus a criminal defendant who has the desire and the financial means to retain his own counsel generally "'should be afforded a fair opportunity to secure counsel of his choice.'" *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1351 (6th Cir. 1993) (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). This right, however, is not absolute, and "is circumscribed in several important respects." *Wheat v. United States*, 486 U.S. 153, 159 (1988); *see also*, *Gonzalez-Lopez*, 548 U.S. at 144.

For example, "[t]he Sixth Amendment requires only that the defendant be given a fair or reasonable opportunity to obtain particular counsel; it does not guarantee an absolute right to the counsel of one's choice." *United States v. Paternostro*, 966 F.2d 907, 912 (5th Cir. 1992); *see also*, *Gonzalez-Lopez*, 548 U.S. at 144; *United States v. Baker*, 432 F.3d 1189, 1248 (11th Cir. 2005). Further, and importantly, the right to counsel of one's choice "must be balanced against the court's authority to control its own docket, and a court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court." *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988); *see also*, *Lockett v. Arn*, 740 F.2d 407, 413 (6th Cir. 1984) ("Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the

exercise of that right must be balanced against the court's authority to control its docket."). Further, trial courts have "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (citations omitted) (citing *Wheat*, 486 U.S. at 160; *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983)).

Where a trial court denies a continuance for a defendant's choice of counsel to be retained or appear at trial, the trial court's decision is deferentially reviewed. "The matter of a continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). At the same time, "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Id.* In short, "broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to assistance of counsel." *Morris*, 461 U.S. at 11-12 (quoting *Ungar*, 376 U.S. at 589).

### b. Analysis

After petitioner failed to appear for his originally scheduled sentencing date, he was arrested on a warrant and appeared for an arraignment on the contempt charge. Petitioner had no counsel at that hearing. Nevertheless, the court found petitioner guilty of contempt. At that time, petitioner also indicated that retained trial counsel Vitale would be representing him at sentencing. *See* Arraignment Tr., dated 1/26/09, at 5. When petitioner and counsel appeared for the hearing on his motion for new trial and for sentencing, counsel informed the court that petitioner had fired him. *See* Sentence Tr., dated 3/3/09, at 3. Counsel asked the court for an adjournment, and indicated that

36

petitioner had already retained new counsel. *See id*. at 5-6. The trial court denied counsel's request to withdraw. *See id*. at 7-8. Petitioner contends that this deprived him of his right to counsel of his choice. The Michigan Court of Appeals rejected this claim, concluding that the trial court did not err because petitioner was not diligent in asserting his right to counsel of his choice. *See McLean*, 2011 WL 4056389, at *12. The Court should conclude that this determination was reasonable.[3]

As noted above, a trial court has broad discretion in dealing with requests to change counsel. The standard set forth by the Supreme Court for assessing a trial court's exercise of its discretion is a broad, general standard, under § 2254(d)(1) the state courts had "'more leeway . . . reaching outcomes in case-by-case determinations.'" *Renico v. Lett*, 559 U.S. 766, 776 (2010) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, because the applicable standard "is a general one, . . . the range of reasonable applications is substantial." Here, petitioner cannot show that the court of appeals's determination was outside of the substantial range of reasonable applications. Petitioner had been convicted over a year prior to sentencing, and sentencing had been significantly delayed by petitioner's failure to cooperate with the probation department and his failure to appear for sentencing. Shortly before the sentencing hearing, petitioner indicated that Mr. Vitale would continue to represent him, and did not in any way indicate any problems with Mr. Vitale's representation. Petitioner had a substantial amount of time between his conviction and the sentencing date to seek substitution of his newly retained counsel if he so desired. Despite this, petitioner waited until the day of sentencing to request that newly retained counsel be

---

[3]In Michigan Court of Appeals, petitioner raised a claim that he was denied his right to counsel when the trial court found him guilty on the contempt charge. That error was cured by the court of appeals's vacating of petitioner's contempt conviction, and does not appear to be part of petitioner's claim here. Petitioner did not separately raise a claim that he was denied his right to counsel of his choice at sentencing, but he did raise this as an argument in support of his other sentencing claims.

permitted to represent him.  Further, the parties were prepared at that time not only for sentencing, but also to argue petitioner's motion for new trial, which had been prepared by Mr. Vitale.  And although petitioner indicated that he had already retained other counsel, that attorney had not filed an appearance in the case.  In these circumstances, petitioner cannot show that the trial court abused its discretion in denying a continuance, and thus he cannot show that the denial of the continuance wrongly deprived him of his right to counsel of his choice.  *See United States v. Pineda Pineda*, 481 Fed. Appx. 211, 212 (5th Cir. 2012) (per curiam) (no denial of right to counsel of choice by denial of motion for continuance where, *inter alia*, the motion was "not made until the day of the sentencing hearing, the newly retained attorney was not prepared to proceed without a continuance, the case had been going on for 'a very long time' already, [and defendant] presented no basis why his appointed counsel would not be suitable to proceed at the sentencing hearing[.]"); *United States v. Barreras*, 494 Fed. Appx. 115, 119 (2d Cir. 2012) (district court did not deprive defendant of his right to counsel of his choice by denying motion for substitution where motion was made "on the eve of sentencing," "[s]entencing had already been adjourned twice," and new counsel "informed the District Court that he was not prepared to represent [defendant] at the scheduled sentencing and would require yet another adjournment.").  Moreover, petitioner was represented by new counsel at his resentencing, curing any error.  It follows that the Michigan Court of Appeals's rejection of this claim was a reasonable application of clearly established federal law.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

2.      *Ineffective Assistance of Counsel (Claims III & IV)*

Petitioner next contends that his trial counsel rendered constitutionally inadequate assistance in several respects.  The Court should conclude that petitioner is not entitled to habeas relief on these

38

claims.

*a. Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818,

39

833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

*b. Analysis*

Petitioner first contends that counsel was ineffective for failing to challenge the illegal search

40

of his bank accounts at Citizens First Savings Bank and Eastern Michigan Bank. He contends that there was no probable cause for the searches because he had repaid Stocks the amounts for which the insufficient funds checks were written prior to the time the search warrants were obtained, and because they failed to describe the records to be searched with particularity. The Michigan Court of Appeals rejected this claim, concluding that the warrants were not overbroad and thus that any objection would have been futile. This determination was reasonable. To establish prejudice on this claim, petitioner must show "that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).[4] Here, petitioner cannot show that his Fourth Amendment claim is meritorious. As explained above in connection with petitioner's *Brady* claim, the fact that petitioner may have paid back the amounts owed did not negate probable cause for the searches; the relevant question on the insufficient funds charges was petitioner's knowledge and intent at the time the checks were written, and his later repayment did not provide a defense to the charges. Nor can petitioner show that the warrants were overbroad or failed to describe with particularity the records to be searched. As to the latter, the Fourth Amendment requires that a warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. CONST. amend IV. However, "[t]he particularity requirement does not require that every item or document seized must be specifically identified in a warrant." *United States v. Lake*, 233 F. Supp. 2d 465, 471 (E.D.N.Y. 2002). Rather, the particularity requirement is met if the warrant is "sufficiently specific to permit the rational exercise of judgment by the executing officers in

---

[4]Although *Stone v. Powell, supra*, bars litigation of a Fourth Amendment claim on habeas review, a Sixth Amendment claim of ineffective assistance of counsel based on counsel's failure to properly present a Fourth Amendment claim is distinct, and is cognizable on habeas review under the standard set forth in *Strickland. See Kimmelman*, 477 U.S. at 374-75.

41

selecting what items to be seized." *Id.* (internal quotation omitted).  Here, the warrants described the records to be searched and seized as "any and all bank records pertaining to and/or concerning" petitioner, Tomcat Engineering, or Katherine McDowell, "including but not limited to" the specific accounts identified by the police and "including but not limited to, signature cards, account holder information, savings, and checking account information."  Pet., App. 2A1, 2B1.  These warrants were limited to the accounts of specific people or entities at specific banks, and were sufficiently specific to permit the police to exercise rational judgment in selecting the items to be seized.  *See Russell v. Harms*, 397 F.3d 458, 464 (7th Cir. 2005) (warrant authorizing seizure of "written records of sales," "computer documents," "bank records," and "Email records" satisfied particularity requirement); *United States v. Lampaziane*, 251 F.3d 519, 527 (5th Cir. 2001) (similar).  Nor can petitioner show that the warrant was overbroad.  Petitioner was charged with a wide-ranging scheme to defraud Stocks, and Stocks's allegations provided probable cause to support those charges.  Given the extensive nature of the fraud alleged, there was probable cause to believe that petitioner's bank records, and those of his company, would provide evidence of a crime.  *See Williams v. Kunze*, 806 F.2d 594, 598 (5th Cir. 1986) ("Where probable cause exists to believe that an entire business was merely a scheme to defraud, or that all records of a business are likely to constitute evidence, a warrant authorizing the seizure of all such records and describing them in generic terms is sufficient to meet the particularity requirement of the [F]ourth [A]mendment.").

More fundamentally, petitioner cannot show a reasonable probability that a motion to suppress would have been granted because the search of petitioner's bank records did not implicate the Fourth Amendment at all.  "The Supreme Court consistently has held that there is no legitimate expectation of privacy in information a person voluntarily reveals to third parties.  Specifically, the

42

Court has held that there is no reasonable expectation of privacy in bank records, including financial statements, because the records only contained information the customer voluntarily conveyed to the bank and its employees in the ordinary course of business." *United States v. Cray*, 450 Fed. Appx. 923, 930 (11th Cir. 2012) (citation omitted) (discussing *United States v. Miller*, 425 U.S. 435, 442-43 (1976)).[5]   Nor could counsel have moved to suppress on the basis of the Michigan constitution, as the Michigan courts follow the *Miller* rule under the state constitution. *See People v. Gadomski*, 274 Mich. App. 174, 179-80, 731 N.W.2d 466, 469-70 (2007).  Because petitioner had no reasonable expectation of privacy in the bank records, the search of those records did not violate the Fourth Amendment, even if the warrants were defective.  Thus, petitioner cannot show that he was prejudiced by counsel's failure to seek suppression of this evidence, and he is not entitled to habeas relief on this claim.

Petitioner next contends that counsel was ineffective for failing to investigate and present as evidence documents which would have rebutted Stocks's itemized list of monies she had given to petitioner.  Even assuming that these documents were known to counsel or should have been discovered by him, however, petitioner cannot show a reasonable probability that the result of the proceeding would have been different.  Stocks compiled, for the police, a list of all the money or

---

[5]In response to *Miller*, Congress passed the Right to Financial Privacy Act, 12 U.S.C. §§ 3401-3422, to provide a limited, statutory privacy right with respect to bank records.  The RFPA would have provided no basis for counsel to file a motion to suppress however, because (a) suppression of evidence in a criminal case is not an appropriate remedy for a violation of RFPA, *see Cray*, 450 Fed. Appx. at 931; *United States v. Davis*, 953 F.2d 1482, 1496 (10th Cir. 1992); *United States v. Thomas*, No. 88-6341, 1989 WL 72926, at *2 (6th Cir. July 5, 1989) (per curiam), and (b) the RFPA limits only access by federal government officials to personal financial records, and is inapplicable to state officials.  *See Wright v. Liguori*, 445 Fed. Appx. 469, 471 (3d Cir. 2011); *Easter v. Nevada State Bank*, 58 Fed. Appx. 355, 355-56 (9th Cir. 2003); 12 U.S.C. §§ 3402, 3401(3) (providing, respectively, that with certain exceptions "no Government authority may have access to or obtained copies of . . . the financial records of any customer from a financial institution" and that "Government authority" means "any agency or department of the United States, or any officer, employee, or agent thereof.")

property she had given to petitioner, totaling $124,371.00. This list was introduced as an exhibit at petitioner's trial. *See* Pet., App. 2C1. Petitioner submits a number of documents which he contends either dispute Stocks's characterization of the payments made by Stocks, or which show that he reimbursed some of the payments. For the most part, although these transfers were part of the overall relationship between Stocks and petitioner, they were not the basis of the charges against petitioner. The larceny charges against petitioner were based on the $35,000 given to petitioner for the Orange County Choppers contract, secured by the Impala; the conversion of the custom wheels and tires on the Chrysler 300, and the motorcycle purchased on eBay. With respect to the money secured by the Impala and paid for the motorcycle, petitioner presents no documents contradicting Stocks's testimony.[6] As to the wheels and tires, the document submitted by petitioner shows only that the wheels and tires were purchased and installed on the Chrysler 300. *See* Pet., App. 2C2, Ex. I. It does not bear on Stocks's testimony that petitioner returned the car to her without the upgraded wheels and tires. With respect to petitioner's more general claim that these documents would have shown that he reimbursed Stocks for a substantial amount of the payments she made, or that he made some of the payments on the Chrysler 300 and the eBay motorcycle, those facts were brought out at trial notwithstanding the absence of the documents, many of them through Stocks's own admissions on cross-examination. *See* Trial Tr., Vol. II, at 200, 208, 209, 260-61, 295 (testimony of Stocks regarding payments made by petitioner); Vol. III, at 445-64 (testimony of Tomcat Engineering accountant Kathy Lindall regarding checks written to Stocks and two payments made to Chrysler). In light of the fact that Stocks's testimony was vigorously impeached by counsel, and

---

[6]In his Appendix 2C2, petitioner includes an itemized refutation of Stocks's list, and references attached exhibits. With respect to the $35,000 and the money paid for the eBay motorcycle, petitioner's own list refers to Exhibits K and L of Appendix 2C2, but the materials submitted by petitioner do not include an Exhibit K and L, ending at Exhibit J.

that the basic facts reflected in the documents (namely, petitioner's repayments to Stocks) were brought out at trial, petitioner has failed to explain how presenting this additional documentation to the jury, regarding transactions that did not form the core of the charges against him, would have created a reasonable probability of a different result.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner also argues that counsel was ineffective for failing to investigate and interview potential defense witnesses.  He contends that he gave the names of three witnesses–Kevin Robbins, Shane Cline, and Michelle Cline–but counsel did not speak with them apart from a brief conversation outside the courtroom during the course of the trial.  Petitioner contends that these witnesses, his neighbors, had been present at a number of social gatherings with him and Stocks. The Michigan Court of Appeals rejected petitioner's claim, concluding that he could not establish prejudice because he "fail[ed] to identify what testimony these witnesses would have offered or explain how that testimony would have been relevant."  *McLean*, 2011 WL 4056389, at *8.  This determination was reasonable.  As noted above, it is petitioner's burden to establish the elements of his ineffective assistance of counsel claim, *see Pierce*, 63 F.3d at 833, and thus "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits."  *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008).  Here, petitioner has not presented any evidence that these witnesses would have testified, or explained what they would have testified to had they been called at trial.  He states only that they were present at social gatherings with petitioner and Stocks; he does

45

not state that they had any knowledge of the financial transactions relevant to the charges against petitioner.  Thus, petitioner cannot show that he was prejudiced by counsel's failure to call these witnesses at trial.

Finally, petitioner contends that counsel was ineffective for failing to seek suppression of Hicks's testimony because she was reading from her notes.  In general, Hicks's testimony related to the Impala.  She testified that the Impala had been stored with her since 2004, and during that entire time the vehicle was in the condition reflected in the photographs introduced at trial.  She also testified to taking photographs of a green motorcycle frame.  During her examination, the following exchange occurred:

> Q:      Do you remember when the green motorcycle first would have, would have come and been stored in Indiana with you?
>
> A:      Been stored?
>
> Q:      Or when – I'm sorry, let me rephrase that question.
>           When did you first see this green motorcycle frame that's depicted in the, in the photographs?
>
> A:      Can I look at my notes?
>
> THE COURT:          If you need to.
>
> MR. VITALE:          Your Honor, I would just request that we be able to look and see what she's looking at, that's all.  May I approach?
>
> THE COURT:          You, you may.  Both counsel may take --
>
> MRS. NOVOSEL:    Thank you, your Honor.
>           Your Honor, I don't believe there's an objection by either side to her using the notes to refresh her memory.  I would – Defense Counsel asked that I ask her one question and just illustrate that for the record.
>
> Q:      When did you make those notes for yourself?

A:      This morning.

Q:      And why did you make the notes?

A:      Just to recall my memory just so I'm accurate.

THE COURT:        Okay.  You may use the notes to refresh your memory.

Trial Tr., Vol. III, at 367-68.  The Michigan Court of Appeals rejected petitioner's claim that

counsel was ineffective for failing to object to Hicks's testimony, reasoning that it was "unclear

from the record whether the witness in fact read from her notes while testifying," that counsel

properly brought the matter to the court's attention, and that petitioner "fail[ed] to explain how the

results of his trial would have been different if counsel had raised a formal objection."  *McLean*,

2011 WL 4056389, at *9.  This determination was reasonable.

Contrary to petitioner's argument, the record does not support his assertion that Hicks was

reading from her notes during her testimony.  On the contrary, she specifically asked permission to

look at her notes to refresh her recollection, suggesting that she had not been reading from her notes,

but testifying from her memory.  And the court instructed the witness that she could use the notes

to refresh her memory, not that she could directly read from the notes in giving her testimony.  And

there was nothing improper in allowing the witness to use her notes to refresh her recollection.  *See

People v. Rowan*, 76 Mich. App. 124, 126, 255 N.W.2d 791, 792 (1977) ("Witnesses testifying from

memory are traditionally allowed to refresh their recollection from their own prepared notes.");

MICH. R. EVID. 612; *cf. Johnston v. Farmers' Fire Ins. Co. of York*, 106 Mich. 96, 100, 64 N.W. 5,

6 (1895) ("He refreshed his memory from a list which he made from recollection a short time before

the trial.  This was competent."); *Durbin v. K-K-M Corp.*, 54 Mich. App. 38, 44, 220 N.W.2d 110,

114 (1974) ("The extent to which witnesses may refer to or read from refreshing memoranda . . . is

47

usually a matter within the discretion of the trial court[.]").  Because Hicks's testimony was not objectionable, petitioner cannot show that counsel was ineffective.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.     *Sentencing (Claims VII-IX)*

Finally, petitioner raises several challenges to his sentence.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Inaccurate Information (Claims VII & IX)*

Petitioner contends that he was sentenced on the basis of inaccurate information.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

a.  *Clearly Established Law*

In *Townsend v. Burke*, 334 U.S. 736 (1948), and *United States v. Tucker*, 404 U.S. 443 (1972), "the United States Supreme Court invalidated defendants' sentences because they were imposed by trial courts in reliance upon material false assumptions of fact."  *Eutzy v. Dugger*, 746 F. Supp. 1492, 1504 (N.D. Fla. 1989) (discussing *Townsend* and *Tucker*); *accord Stewart v. Peters*, 878 F. Supp. 1139, 1144 (N.D. Ill. 1995) (same).  *See generally*, *Tucker*, 404 U.S. at 448-49; *Townsend*, 334 U.S. at 740-41.  It is well established, however, that a *Tucker* violation arises only where the improper information  "actually served as the basis for the sentence."  *United States v. Jones*, 40 Fed. Appx. 15, 17 (6th Cir. 2002) (internal quotation omitted); *see also*, *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003); *United States v. Johnson*, 767 F.2d 1259, 1276 (8th Cir. 1985).  "A sentencing court demonstrates reliance on misinformation when the court gives 'explicit attention' to it, 'found[s]' its sentence 'at least in part' on it, or gives 'specific consideration' to the information before imposing sentence."  *Lechner*, 341 F.3d at 639 (quoting *Tucker*, 404 U.S. at 444,

48

447).  Thus, to be entitled to habeas relief on this claim  petitioner "must show that the sentencing court actually relied on this information and that it was materially false." *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1074 (E.D. Mich. 2000) (Gadola, J.).

### b.  Analysis

Petitioner contends that various statements made by the probation officer in the Presentence Investigation Report (PSIR) are inaccurate.  Specifically, he contends that the PSIR inaccurately states that: (1) he was uncooperative with the probation officer; (2) he had no verifiable employment; (3) he had no high school education; and (4) he had served three prior prison commitments.  Even assuming, *arguendo*, that these statements in the PSIR were inaccurate, petitioner cannot show that the trial court actually relied on this information in imposing sentence. This information was background information completed as part of the statutorily mandated presentence report.  It was not information that was used in computing the sentencing guidelines which gave the court the permissible range of punishment.  Nor did it factor into the court's reason for imposing sentence at the high end of the guidelines range.  The court explained that its choice of sentence was based on the circumstances of the crime and petitioner's extensive criminal history. *See* Sentence Tr., at 36-40.  Indeed, petitioner's principal argument is that the inaccuracies in the PSIR are being used by the Michigan Department of Corrections to require him to complete unnecessary substance abuse, vocational, and educational programs.  There is no federal constitutional right to a pre-sentence investigation and report, *see Allen v. Stovall*, 156 F. Supp. 2d 791, 797 (E.D. Mich. 2001) (O'Meara, J.), and thus "[e]ven when there is an alleged factual inaccuracy in a pre-sentence report, a court need not resolve the dispute when the information is not relied on in arriving at the sentence that was imposed." *Wallace v. Bell*, No. 2:08-CV-11551, 2009

49

WL 385555, at *6 (Feb. 13, 2009) (Komives, M.J.) (citing *Warren v. Miller*, 78 F. Supp. 2d 120, 131 (E.D.N.Y. 2000)), *magistrate judge's report and recommendation adopted*, 2009 WL 1325462 (E.D. Mich. May 11, 2009) (Edmunds, J.). This is true even if the PSIR is used by prison officials to determine the appropriate placement and rehabilitative program for petitioner. *See id*.; *Spangler v. Davis*, No. 05-60141, 2008 WL 4190017, at *12 (E.D. Mich. Sept. 5, 2008) (O'Meara, J., adopting recommendation of Komives, M.J.).

Moreover, an updated PSIR was prepared for petitioner's resentencing following remand from the court of appeals. Petitioner does not suggest that this updated PSIR contained the allegedly inaccurate information, and at resentencing petitioner's counsel indicated that there were no factual inaccuracies. *See* Resentence Tr., at 5. Counsel also noted that prison officials were able to confirm that petitioner did, in fact, have a GED. *See id*. at 7-8. And nothing in the resentencing transcript indicates that the court relied on any inaccurate information in the initial PSIR in imposing sentence. In short, even if the original PSIR contained inaccuracies, "petitioner has failed to demonstrate that the trial court relied on this information in imposing sentence." *Allen*, 156 F. Supp. 2d at 797. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

2.    *Restitution (Claim VIII)*

Petitioner also contends that the trial court erred in ordering restitution without conducting a hearing, and that the amount of restitution ordered was not factually supported. This claim does not provide a cognizable basis for habeas relief. The habeas statute provides that a federal court may entertain a habeas application from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Because an order of restitution has no bearing on the validity or duration of a prisoner's custody, a challenge

50

to an order of restitution is not cognizable under § 2254. *See Taylor v. Hamlet*, 88 Fed. Appx. 220, 220 (9th Cir. 2004); *Flores v. Hickman*, 533 F. Supp. 2d 1068, 1085 (C.D. Cal. 2008); *Carter v. Smith*, No. 06-CV-11927, 2007 WL 325358, at *7 (E.D. Mich. Jan. 31, 2007) (Steeh, J.); *cf. Kaminski v. United States*, 339 F.3d 84, 89 (2d Cir. 2003); *Smullen v. United States*, 94 F.3d 20, 26 (1st Cir. 1996). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.     *Recommendation Regarding Certificate of Appealability*

    1.     *Legal Standard*

    As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to

51

deserve encouragement to proceed further.""" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999)

(quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893

n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new

Act does, however, require that certificates of appealability, unlike the former certificates of

probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C.

§ 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254

Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court

must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a

certificate of appealability "state the specific issue or issues that satisfy the showing required by §

2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of

Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not

issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory

committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either

grant or deny the certificate of appealability at the time of its final adverse order, I include a

recommendation regarding the certificate of appealability issue here.

    2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the

Court should also conclude that petitioner is not entitled to a certificate of appealability.  As

explained above, there was abundant evidence that petitioner misrepresented not only the value of

the Impala, but also that he had signed the Impala over to Stocks and that he had an existing contract

with Orange County Choppers from which the loan would be repaid.  There was also abundant evidence, if believed by the jury, that petitioner converted both the eBay motorcycle and the custom wheels and tires to his own use.  Thus, the resolution of petitioner's sufficiency of the evidence claims is not reasonably debatable.  It is likewise not reasonably debatable that each piece of evidence allegedly suppressed by the prosecution was equally available to petitioner and thus not suppressed by the prosecutor, or that Detective Jacobson's comment on petitioner's silence was a permissible response to petitioner's claim that he was not given the opportunity to tell his side of the story.  Thus, the resolution of petitioner's prosecutorial misconduct claims is not reasonably debatable.  Because the trial court did not abuse its discretion in finding that petitioner's request for a continuance was untimely, and because in any event petitioner cannot show that the two witnesses for whom he sought a continuance would have raised a reasonable doubt that did not otherwise exist, the resolution of petitioner's right to present a defense claim is not reasonably debatable.  Because the trial court did not deprive petitioner of his right to counsel of his choice by denying petitioner's motion to substitute counsel as untimely, and because petitioner has failed to show that he was prejudiced by any of counsel's alleged errors, the resolution of petitioner's counsel claims is not reasonably debatable.  Finally, because the trial court did not rely on any materially false information in imposing sentence, and because petitioner's claims challenging the accuracy of the presentence report and the amount of restitution are not cognizable, the resolution of petitioner's sentencing claims is not reasonably debatable.  Accordingly, the Court should deny petitioner a certificate of appealability.

J.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of

53

petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: June 25, 2014                         s/Paul J. Komives
                                             PAUL J. KOMIVES
                                             UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on June 26, 2014,
electronically and/or by U.S. mail.

s/Michael Williams
Case Manager to the Honorable
Paul J. Komives