UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID MICHAEL MCLEAN,

    Petitioner,                                             Civil Action No. 13-CV-14116

vs.                                                       HON. BERNARD A. FRIEDMAN

KENNETH ROMANOWSKI,

    Respondent.

_____/

**<u>ORDER ACCEPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>**

This matter is presently before the Court on petitioner's application for a writ of habeas corpus. Magistrate Judge Paul J. Komives has submitted a Report and Recommendation ("R&R") in which he recommends that the Court deny the petition. Petitioner has filed timely objections; respondent has not responded. Pursuant to Fed. R. Civ. P. 72(b)(3), the Court reviews de novo those portions of the R&R to which timely and specific objections have been made. In the present case, petitioner objects specifically only to certain portions of the magistrate judge's R&R, as discussed below. As to the rest of the R&R, petitioner either does not object or he objects generically by referring the Court to his petition or to the application he filed with the Michigan Supreme Court for leave to appeal. Objecting generically is equivalent to not objecting. *See Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir.1991); *Malouf v. Detroit Med. Ctr.*, 2014 WL 1048070, at \*2 (E.D. Mich. Mar. 18, 2014). The Court shall therefore limit its review to the magistrate judge's analysis of the claims as to which petitioner has specifically objected. As to all other claims, the Court shall accept the magistrate judge's analysis and recommendation as if no objections had been filed.

Petitioner first objects to the magistrate judge's analysis of his "sufficiency of the

evidence" claim as it relates to the convictions for larceny by false pretenses and larceny by conversion. The Michigan Court of Appeals rejected petitioner's challenges to these convictions, finding that the jury had a sufficient factual basis for finding all elements of both crimes. The magistrate judge concurs with this assessment of the evidence. The first charge was proven with evidence showing that petitioner conned the victim, Frances Stocks, into giving him $35,000 by falsely claiming he expected to receive funds shortly from a lucrative contract and by purporting to transfer to her, as collateral, the title to a car he claimed to be in "mint condition" and worth the amount of the loan. In fact, there was no contract, petitioner did not transfer title, and the car was worth substantially less than the amount of the loan. The second charge was proven with evidence showing that petitioner converted a motorcycle and automobile wheels and tires. The Michigan Court of Appeals rejected petitioner's challenges to these convictions as follows:

> "The crime of larceny by false pretenses requires (1) a false representation as to an existing fact, (2) knowledge by the defendant of the falsity of the representation, (3) use of the false representation with an intent to deceive, and (4) detrimental reliance by the victim on the false representation." [*People v. Webbs*, 263 Mich.App 531, 532 n 1; 689 NW2d 163 (2004), quoting *People v. Flaherty*, 165 Mich.App 113, 119; 418 NW2d 695 (1987), overruled in part on other grounds; see also MCL 750.218.]
>
> Based on the evidence, a rational trier of fact could find: (1) that defendant falsely represented to Stocks that (a) he had a contract with Orange County Choppers and that the $35,000 loan would be paid off in full by October, (b) he had transferred title to the Impala, and (c) the Impala was in "mint" condition and was worth $35,000;

> FN1 (2) that defendant knew that his representations regarding (a) the existence of the contract and his ability to pay off the loan, and (b) the transfer of title were false; (3) that defendant intended to deceive Stocks into believing that he (a) had a contract with Orange County Choppers and could pay the loan off in full by October, and (b) had transferred title so the $35,000 Impala would be collateral for the loan; and (4) that Stocks relied on defendant's false representation when she gave him the $35,000 loan proceeds. Accordingly, the prosecutor presented sufficient evidence that the essential elements of larceny by false pretenses were proved beyond a reasonable doubt.

---

> > FN1. We reject defendant's argument that any statement he made, that the "mint" condition Impala had a value of $35,000, was a statement of opinion, not a misrepresentation of fact, and thus could not support a charge of larceny by false pretenses. This statement, along with the picture that defendant showed Stocks, served as the basis for the verification of value Stocks made before agreeing to the loan. Defendant's statement regarding the Impala does not constitute a mere "overcharge" as addressed by this Court in People v. Wilde, 42 Mich.App 514, 518; 202 NW2d 542 (1972) because "overcharges" involve "departures in a person's opinion of the value of his services from the established standard."

---

Defendant argues that the evidence was insufficient to support his convictions of larceny by conversion because Stocks voluntarily transferred both possession and title of the upgraded wheels, tires, and eBay motorcycle to him. Defendant argues that he therefore committed larceny by false pretenses, if anything, not larceny by conversion. The elements of larceny by conversion are:

> (1) the property at issue must have "some value," (2) the property belonged to someone other than the defendant, (3) someone delivered the property to the defendant, irrespective of whether that delivery was by legal or illegal means, (4) the defendant embezzled, converted to his own use, or hid the property "with the intent to embezzle or fraudulently

3

use" it, and (5) at the time the property was embezzled, converted, or hidden, the defendant "intended to defraud or cheat the owner permanently of that property." Stated more simply, larceny by conversion occurs "where a person obtains possession of another's property with lawful intent, but subsequently converts the other's property to his own use." [*People v. Mason*, 247 Mich.App 64, 72; 634 NW2d 382 (2001), quoting *People v. Scott*, 72 Mich.App 16, 19; 248 NW2d 693 (1976).]

"[I]f the owner of the goods intends to keep title but part[s] with possession, the crime is larceny; if the owner intends to part with both title and possession, albeit for the wrong reasons, the crime is false pretenses." *People v. Malach*, 202 Mich.App 266, 271; 507 NW2d 834 (1993).

The prosecutor presented sufficient evidence that the essential elements of larceny by conversion of the eBay motorcycle were proved beyond a reasonable doubt. Stocks purchased the motorcycle with the proceeds of a Capital One internet loan for $12,000 and a $1,000 cash deposit. The motorcycle was delivered to defendant's home for modification and ultimately sale under the Orange County Choppers contract. The fact that Stocks retained title to the motorcycle is consistent with the conclusion that she only gave defendant possession of it for this limited purpose. In light of evidence that defendant later informed Stocks that the motorcycle's frame was cracked and could not be sold as part of the Orange County Choppers contract, and that the motorcycle was transported to Indiana and dismantled, we conclude that a reasonable trier of fact could find that defendant intended to permanently cheat Stocks of the motorcycle despite her transfer for the limited purpose of the Orange County Choppers contract.

Likewise, the prosecutor presented sufficient evidence that the essential elements of larceny by conversion of the upgraded wheels and tires were proved beyond a reasonable doubt. Stocks testified that defendant asked her to purchase a new, flashier vehicle, so that he could use it to entertain clients. Stocks purchased a Chrysler 300 with a roughly $37,000 loan, which included upgraded wheels and tires defendant wanted. She said the $2,400 cost of the four upgraded wheels and tires was included in her vehicle financing, and then the dealership wrote a $2,400 check directly to Discount Tire Company. Stocks said that defendant took the car to Discount Tire and had the

>upgraded wheels and tires installed. Some evidence, such as defendant's promise that the company would make the car payments, suggests that Stocks intended to transfer title and possession of the car, wheels, and tires to defendant. However, a reasonable trier of fact could otherwise find that Stocks gave possession of the car, wheels, and tires for the limited purpose of entertaining clients and, by subsequently returning the car without the upgraded wheels and tires, defendant intended to permanently cheat Stocks of those items. We will not second-guess the trier of fact's determinations concerning what inferences fairly arise from the evidence. *Hardiman*, 466 Mich. at 428.

*People v. McLean*, 2011 WL 4056389, at **2-3 (Mich. App. Sept. 13, 2011).

Petitioner now repeats arguments which the Michigan Court of Appeals and the magistrate judge properly rejected. He argues the prosecutor did not prove he misrepresented the value of the Impala; that the prosecutor did not prove petitioner did not have a contract with Orange County Choppers; that a promise to transfer title was a future promise, not a promise about an existing fact; that petitioner "was not required to transfer the title"; that he had agreed to repay Stocks in installments; that petitioner sold Stocks the car "as is"; that the prosecutor violated petitioner's and Stocks' right to enter into a contract; that the bill of sale for the Impala had a warranty disclaimer and therefore petitioner was released from damages; that the prosecutor did not prove petitioner converted property for his own use; that the prosecutor breached his "fiduciary duty for misrepresentation of the facts surrounding the subject property"; that Stocks "transferred legal title of the Homemade Motorcycle and Chrysler 300c to petitioner"; that petitioner agreed to purchase the motorcycle from Stocks on installments; and that Stocks received insurance money for the damaged wheels and tires.

As noted by the Michigan Court of Appeals and the magistrate judge, a habeas claim based on alleged insufficiency of the evidence must be denied if "any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). While petitioner has suggested reasons why the jury might have found in his favor on one or more of the elements of the crimes with which he was charged, he has not shown that the jury acted irrationally in convicting him. Based on the evidence presented, and in particular Stokes' testimony, the Court cannot say that the Michigan Court of Appeals violated clearly established Supreme Court precedent in concluding that petitioner failed to meet the demanding standard of *Jackson*. For the same reason, the Court overrules petitioner's objection to the magistrate judge's analysis.

Petitioner next argues he is entitled to habeas relief based on prosecutorial misconduct. Petitioner argues the prosecutor failed to produce the search warrant affidavits, which petitioner believes would have shown exculpatory information from his bank account statements. The Michigan Court of Appeals rejected this claim, and the magistrate judge correctly found that that court's treatment of the issue was reasonable, because the prosecutor had no duty to produce documents, such as petitioner's own bank account statements, which were readily available to petitioner himself. Petitioner's other arguments regarding alleged prosecutorial misconduct are either frivolous or incomprehensible, and they were properly rejected by the Michigan Court of Appeals.

Finally, petitioner argues his trial attorney was ineffective. The Michigan Court of Appeals rejected this argument for the reasons indicated at pages **7-9 of its opinion, namely, because (1) there was no showing of prosecutorial misconduct to which counsel should have objected; (2) there was no overly broad search warrant to which counsel should have objected; (3) there was no showing that counsel failed to review exculpatory documents; (4) there was no showing

that counsel failed to interview or present witnesses; and (5) petitioner failed to show his attorney acted improperly by failing to object to a witness who appeared to be reading from notes. The magistrate judge correctly found that these conclusions are not inconsistent with Supreme Court precedent. In his objections, petitioner focuses on the third and fifth issues. However, petitioner did not identify for the Michigan Court of Appeals any particular documents or checks his attorney failed to introduce *and* which would likely have affected the jury's verdict if they had been introduced. Nor has he shown that any error occurred regarding the witness who read or consulted her notes. As indicated by the trial transcript, the trial judge permitted the witness to consult her notes only after inquiring whether she needed them to refresh her memory. In any event, the Court agrees with the magistrate judge's assessment that the Michigan Court of Appeals reasonably followed Supreme Court precedent on all of these issues. No ineffectiveness of trial counsel has been shown. Accordingly,

IT IS ORDERED that Magistrate Judge Komives' R&R is hereby accepted and adopted as the findings and conclusions of the Court.

IT IS FURTHER ORDERED that the petition in this matter is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue and that petitioner may not proceed on appeal in forma pauperis.

|  |  |
|---|---|
|  | S/ Bernard A. Friedman |
| Dated:  August 7, 2014 | BERNARD A. FRIEDMAN |
| Detroit, Michigan | SENIOR UNITED STATES DISTRICT JUDGE |